# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

———————————————————————

Comité de Apoyo a los Trabajadores Agrícolas,
Pineros y Campesinos Unidos del Noroeste,
Northwest Forest Worker Center, and
Antonio Rivera Martinez,

      Plaintiffs                          Civil No.

      v.                                Complaint

Thomas E. Perez, in his official capacity as United
States Secretary of Labor;
United States Department of Labor;
Portia Wu in her official capacity as Assistant Secretary,
Employment and Training Administration;
Jeh Charles Johnson, in his official capacity as United
States Secretary of Homeland Security;
United States Department of Homeland Security; and
León Rodriguez, in his official capacity as Director of
the United States Citizenship and Immigration Service,

      Defendants.

———————————————————————

## COMPLAINT

### PRELIMINARY STATEMENT

1.     This is an Administrative Procedure Act (APA) challenge to a Final Rule issued

jointly by the United States Department of Labor (DOL) and Department of Homeland Security

(DHS) on April 29, 2015 entitled "Wage Methodology for the Temporary Non-Agricultural

Employment H-2B Program" (hereafter "2015 Wage Rule"), 80 Fed. Reg. 24,146 (April 29,

2015).   The following provisions of the 2015 Wage Rule violate the APA, 5 U.S.C.

§§ 706(2)(A) & (D):

(1)  20 C.F.R. § 655.10(b)(1) which makes a Collective Bargaining Agreement (CBA) wage the prevailing wage whenever one exists for the job.  This is an arbitrary and capricious change in policy from the 2011 Wage Rule, 76 Fed. Reg. 3452 (Jan. 19, 2011), which only set the prevailing wage at a CBA wage applicable to a job if the CBA wage was higher than any Occupational Employment Statistics (OES), Davis Bacon Act (DBA) or Service Contract Act (SCA) wage applicable to the occupation. This provision violates 5 U.S.C § 706(2)(A) because DOL and DHS offer no rational explanation for this change of policy and it is substantively irrational to set the prevailing wage at a CBA wage that is below the mean wage for an occupation as doing so will necessarily have an adverse effect on the wages of similarly employed workers.

(2)  20 C.F.R. § 655.10(f)(1)(i) which permits employers to use "state-conducted" employer-provided surveys to set the prevailing wage for foreign H-2B workers. It replaces the prior employer-provided survey regulation at 20 C.F.R. § 655.10(f) (2013) which the Third Circuit held to be both procedurally and substantively invalid in *Comite de Apoyo a los Trabajadores Agricolas (CATA) v. Perez,* 774 F.3d 173 (3d Cir. 2014) (hereafter *CATA III).*  Like the 2013 Wage Rule, the new regulation allows use of employer-provided surveys even though a valid OES wage is available.  As in 2013, DOL and DHS fail to offer any explanation for that policy, even though they again acknowledge that allowing use of employer-provided surveys in that situation will result in employers undercutting the OES wage.  DOL also failed to give the public sufficient notice of this provision to allow for meaningful comment in violation of 5 U.S.C. § 706(2)(D).

(3)  20 C.F.R. §§  655.10(f)(1)(ii) and (iii) which allow the use of privately-

conducted employer-provided surveys when no valid OES wage is available.  This reverses DOL's 2011 policy of allowing use of employer-provided surveys only where there is no valid OES, DBA, or SCA wage available.  This provision violates 5 U.S.C. § 706(2)(A) because DOL has failed to offer a rational explanation for changing that policy.  Moreover, it is substantively irrational for DOL and DHS to disallow use in the absence of an OES wage of an available SCA and DBA survey wage, surveys that they recognize as comprehensive and accurate, and instead require employers to use private surveys that DOL views as unreliable.  DOL and DHS also failed to give the public adequate notice of this provision to allow for meaningful comment in violation of 5 U.S.C. § 706(2)(D).

(4)  20 C.F.R. §  655.10(f)(4)(ii) which reverses DOL's 2011 policy of requiring H-2B and other non-immigrant workers to be excluded from employer-provided surveys.  In 2011 DOL found that including such workers in surveys adversely affected U.S. workers.  The current rule is arbitrary in violation of 5 U.S.C. § 706(2)(A) because DOL and DHS neither dispute the accuracy of the 2011 finding nor offer any rational reason for abandoning it.  DOL and DHS also failed to give the public adequate notice of this provision to allow for meaningful comment in violation of 5 U.S.C. § 706(2)(D).

(5)  20 C.F.R. § 655.10(b)(2) in so far as it eliminates use of an applicable DBA or SCA wage as the prevailing wage when either is higher than the OES wage as was the policy in the 2011 Wage Rule.  DOL and DHS failed to give the public sufficient notice of the reasons for this change to allow for meaningful comment in violation of 5 U.S.C. § 706(2)(D).

Plaintiffs seek an order vacating the challenged regulations.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346 over this suit

for review of final agency action under the APA, 5 U.S.C. §§ 701-706 (1946), and 28 U.S.C.

§2201 (declaratory relief).

3.      This Court has venue pursuant to 28 U.S.C. § 1391(e).

**PARTIES**

**<u>Plaintiffs</u>**

4.      Plaintiff Comité de Apoyo a los Trabajadores Agrícolas (CATA), known in

English as the "Farmworkers Support Committee," is a membership organization open to

farmworkers, members of the immigrant worker community, and their supporters.  Members live

and work primarily in southern New Jersey, southeastern Pennsylvania, Delaware and eastern

Maryland. Members include U.S. landscaping workers and construction workers and H-2B

landscaping workers.  Through its work, CATA strives to improve the working and living

conditions of its members and member communities. CATA seeks to protect its members'

interest in ensuring DOL is enforcing the H-2B regulations, complying with the relief they

obtained in *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, No. 2:09-240 LP, 2010 WL

3431761 (E.D. Pa. Aug.30, 2010), 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013), *CATA v. Perez*,

774 F.3d 173 (3d Cir. 2014) and operating in accordance with the APA by challenging the

Secretaries' unlawful actions.  CATA has members, its central office, and staff in Gloucester

County, New Jersey.

5.      Plaintiff Pineros y Campesinos Unidos del Noroeste (PCUN) is a union of

farmworkers, nursery, agricultural, food processing and reforestation workers in Oregon. PCUN

has more than 5,000 registered members. PCUN's mission is to empower its membership to

recognize and take action against worker exploitation. Reforestation workers are subject to

4

regulation under the H-2B program.  Regulation of the H-2B program affects PCUN members' wages, working conditions, and ability to obtain and retain jobs. PCUN seeks to protect its members' interest in ensuring DOL is enforcing the H-2B regulations, complying with the relief they obtained in *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, No. 2:09-240 LP, 2010 WL 3431761 (E.D. Pa. Aug.30, 2010), 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013), *CATA v. Perez,* 774 F.3d 173 (3d Cir. 2014) and operating in accordance with the APA by challenging the Secretaries' unlawful action.

6.    The Northwest Forest Worker Center (Center), which was formerly known as the Alliance of Forest Workers and Harvesters, is a multicultural membership organization promoting social, environmental, and economic justice for forestry workers in the Pacific Northwest. Its membership consists of both U.S. workers and H-2B workers who labor in forests. The Center's mission is to advocate for and improve the lives of forestry workers. Forestry workers may be subject to the H-2B regulations, and those regulations affect the Center's members' wages, working conditions, and ability to obtain and retain jobs. The Center seeks to protect its members' interests in ensuring DOL is enforcing the H-2B regulations, complying with the relief they obtained in *Comite de Apoyo a los Trabajadores Agricolas v. Solis*, No. 2:09-240 LP, 2010 WL 3431761 (E.D. Pa. Aug.30, 2010), 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013), *CATA v. Perez,* 774 F.3d 173 (3d Cir. 2014) and operating in accordance with the APA by challenging the Secretaries' unlawful actions.

7.    Antonio Rivera Martinez ("Plaintiff Rivera") has had employment authorization to accept any employment in the United States since April 2011 and had previously worked in Pennsylvania as an H-2B landscaping worker from Mexico in the years 2008 and 2009. Plaintiff Rivera is currently employed as a landscape laborer by an employer in Chester County,

Pennsylvania who continues to utilize H-2B landscaping workers.  In 2009 Plaintiff Rivera was required by the H-2B agent utilized by his Pennsylvania landscaping employer to accept employment in the southeastern United States reforestation industry as an H-2B worker based on representations that he was required to do so in order to be re-employed as an H-2B landscape laborer in 2009. Plaintiff Rivera is directly affected by the wage rates required to be paid to H-2B landscaping workers.

**<u>Defendants</u>**

8.      Defendant Thomas E.  Perez is the United States Secretary of Labor. The Secretary is responsible for all functions of DOL, including administration of the H-2B program. Secretary Perez is sued in his official capacity, pursuant to 5 U.S.C. § 703 and is an official resident of Washington, D.C.

9.      Defendant United States Department of Labor is responsible for issuance of prevailing wage determinations as a part of the process of granting labor certifications for the H-2B program.

10.      Defendant Portia Wu is Assistant Secretary, Employment and Training Administration (ETA).  ETA performs the factual investigation required under 20 C.F.R. Part 655 that culminates in a labor certification. DHS uses ETA's certification in adjudicating H-2B petitions. Wu is sued in her official capacity and is an official resident of Washington, D.C.

11.      Defendant Jeh Charles Johnson is the Secretary of the Department of Homeland Security and is responsible for all functions of the Department of Homeland Security.  He is sued in his official capacity, pursuant to 5 U.S.C. § 703.

12.      Defendant United States Department of Homeland Security is the agency responsible for granting employer petitions for H-2B workers and was jointly responsible for issuing the challenged regulations.

13.     Defendant León Rodriguez ("Rodriguez") is Director of the United States Citizenship and Immigration Service. USCIS is a sub-agency of the Department of Homeland Security. Rodriguez is responsible for the lawful operation of USCIS. He is sued in his official capacity and is an official resident of Washington, D.C.

## FACTS

### Statutory and Regulatory Framework

14.     The Immigration and Nationality Act (INA) permits employers to petition for temporary work visas for foreign workers coming to the United States to perform non-agricultural services or labor but only if ". . . unemployed persons capable of performing . . . such services or labor cannot be found in this country." 8 U.S.C. § 1101 (a)(15)(H)(ii)(b).  This visa program is commonly referred to as the H-2B program.

15.     The INA broadly charges the Attorney General – now the Department of Homeland Security (DHS)[1] – with the authority to grant an employer's request for H-2B visas "after consultation with appropriate agencies of the Government." 8 U.S.C. § 1184(c)(1).  DHS has designated the United State Department of Labor (DOL) as the appropriate agency with which to consult by requesting DOL to provide a "temporary labor certification" with respect to each H-2B application indicating (1) whether qualified workers are available in the United States to fill the employer's job and (2) whether the alien's employment will adversely affect wages and working conditions of similarly employed United States workers. 18 Fed. Reg. 4925 (Aug. 19, 1953); 8 C.F.R. § 214.2(h)(6)(iii)(A) (2009).  H-2B visas can only be issued if DOL certifies

---

[1]   The Homeland Security Act of 2002 transferred the authority of the Attorney General for administering certain immigration functions to the new Department of Homeland Security. 6 U.S.C. §§ 202, 236.

the unavailability of U.S. workers and the absence of an adverse effect. 8 C.F.R.

§ 214.2(h)(6)(iv)(A).

16.    Before issuing a labor certification, DOL reviews an employer's offer of employment to ensure that it meets certain minimum requirements, including offering wages no less than the "prevailing wage" for the occupation and geographic area for which the employer seeks foreign workers. This prevailing wage requirement ensures accurate testing of the U.S. labor market[2] and ensures that the employment of H-2B workers will not adversely affect the wages of similarly employed U.S. workers. *See* 16 Fed. Reg. 9142 (Sept. 7, 1951); 20 C.F.R. § 655.0 (2015).

17.    For many years DOL relied on informal guidance documents to set the prevailing wage for the H-2B program.  These guidance documents changed the method for calculating prevailing wages on several occasions but were never subjected to notice and comment rule-making procedures.  *CATA III*, 774 F.3d at 178.

**The 2008 Rule**

18.    2008 was the first time that DOL engaged in notice and comment rule-making with respect to its procedures for issuing H-2B labor certifications.  *See* 73 Fed. Reg. 29,942 (May 22, 2008) (proposed rule); 73 Fed. Reg. 78,020 (Dec. 19, 2008) (final rule).  However, because the new regulations did not propose changes to the data and methods for making prevailing wage determinations set forth in the prior 2005 informal guidance documents, <u>DOL refused to consider any comments on the prevailing wage procedures</u> set forth in the 2008 Rule. 73 Fed. Reg. at 78,031.

---

[2]    Because U.S. workers cannot be expected to accept employment at substandard wages, offering at least the prevailing wage is a pre-requisite to testing the availability of U.S. workers.

19.     The final 2008 Rule provided that, where a job was covered by a Collective Bargaining Agreement (CBA), the CBA wage would be the prevailing wage.  20 C.F.R. § 655.10(b)(1) (2008); 73 Fed. Reg. at 78,056.  In the absence of a CBA wage, the prevailing wage was defined as "the arithmetic mean . . . of the wages of workers similarly employed at the skill level in the area of employment." 20 C.F.R. § 655.10(b)(2) (2008); 73 Fed. Reg.. at 78,056.

20.     The DOL Bureau of Labor Standards (BLS) Occupational Employment Statistics (OES) survey produces occupational employment and wage estimates for each state and 334 metropolitan areas across industries based on the Standard Industrial Classification (SOC) system of occupational categories for most industries except for certain significant industries specifically omitted by BLS from the OES survey.  The OES wage survey does not purport to actually determine skill levels of workers doing different kinds of jobs.  DOL ETA artificially divided OES survey results to generate four "skill levels" for prevailing wages.

21.     Even if a valid OES skill level prevailing wage was available, the 2008 Rule gave employers the option of using two alternatives to that OES wage:  (1) employers could, if they chose, use an applicable DBA wage or a SCA wage if one existed for their occupation and area of employment, 20 C.F.R. § 655.10(b)(5) (2008), or (2) employers could provide their own wage survey ("employer-provided surveys") as a basis for setting their prevailing wage,  20 C.F.R. § 655.10(f) (2008).

22.     Shortly after the 2008 Rule was issued, H-2B workers and organizations representing H-2B and U.S. workers (including Plaintiffs CATA, PCUN, and the Center), challenged the 2008 skill level methodology as violative of the APA. *CATA v. Solis*, No. 2:09-240 LP (E.D. Pa.). On August 30, 2010, Judge Louis Pollak of the Eastern District of Pennsylvania granted summary judgment to the CATA plaintiffs, finding that the "skill level"

language used in the definition of prevailing wage and the methodology used to implement that

definition was unlawful because it was a legislative rule that had never been subject to notice and

comment rulemaking.  *See* 2010 WL 3431761, at *19 ("*CATA I*").   The Court also found that

DOL's decision to make use of DBA and SCA wages voluntary, rather than mandatory as DOL

required prior to 2005, was also unexplained and arbitrary.  *Id.*  The Court did not vacate the

2008 Rule, but ordered DOL to publish a new wage rule in 120 days.  *Id.* at *25.

**The 2011 Wage Rule**

23.     In response to Judge Pollak's *CATA I* Order, DOL published a new wage rule on

January 19, 2011 with an effective date of January 1, 2012. 76 Fed. Reg. 3452 (Jan. 19, 2011)

("2011 Wage Rule").  In that rulemaking, DOL found that "skill level" prevailing wages were

"too low" and had an adverse effect on U.S. workers because they "artificially lower[] [wages] to

a point that [they] no longer represent[] a market-based wage for the occupation." *Id.* at 3463.

Accordingly DOL eliminated the concept of "skill levels" and set the prevailing wage for an

occupation at the highest rate determined by any applicable CBA, OES, SCA, or DBA wage.  20

C.F.R. § 655.10(b) (2011); 76 Fed. Reg. at 3463, 3484.  DOL explained this decision as follows:

> In situations where there is a SCA or DBA wage determination or
> collectively bargained wage rate in addition to the OES determination, it is
> compatible with our responsibility to avoid adverse effect to mandate that the
> employer pay the higher of these determinations. Such determinations are
> based on real wages being paid to workers in these areas for the same kind of
> work for which H–2B workers are sought—in other words, the labor pool of
> those U.S. workers the would-be H–2B employer should be seeking. By
> requiring the highest wage among these available, validated sources, the
> Department is guaranteeing that the jobs are offered to available workers at
> wages that do not create an adverse effect.

76 Fed. Reg. at 3455.  Thus, instead of the prior practice where an applicable CBA wage was the

prevailing wage and, in the absence of such a wage, the employer could choose among any

applicable OES, DBA or SCA wage, the 2011 Wage Rule made payment of the highest of the four wage sources mandatory.

24.    In that same 2011 rule-making DOL prohibited employers from using employer-provided surveys as an alternative to a valid CBA, OES, DBA, or SCA wage.  DOL explained this change in policy by noting that "employer-provided surveys, generally, are not consistently reliable" and that "[e]mployers typically provide private surveys when the result is to lower wages below the prevailing rate. Such a result is contrary to the Department's role in ensuring no adverse impact." *Id.* at 3465.  The 2011 Wage Rule allowed the use of employer-provided surveys in two circumstances only:  (1) where "there is no data from which to calculate an OES wage and there is no applicable CBA, DBA, or SCA wage," and (2) where the "job opportunity is not accurately represented within the job classification used in those surveys."  20 C.F.R. §  655.10(b)(6), 76 Fed. Reg. at 3466-67, 3484.

25.    DOL delayed implementation of the 2011 Wage Rule numerous times in response to employer lawsuits challenging the validity of the rule and congressional appropriations measures barring DOL from using appropriated funds to implement the rule. *See* 76 Fed. Reg. 59,896 (Sept. 28, 2011); 76 Fed. Reg. 73,508 (Nov. 29, 2011); 76 Fed. Reg. 82,115 (Dec. 30, 2011), 77 Fed. Reg. 60,040 (Oct. 2, 2012), 78 Fed. Reg. 19,098 (Mar. 29, 2013).

26.    While implementation of the 2011 Wage Rule was being delayed, DOL continued to rely on the invalid 2008 "skill level" wage rule to set prevailing wages and continued allowing employers to use employer-provided surveys even where a valid OES wage was available.

27.    Frustrated that "skill level" prevailing wages were still in use more than two years after the *CATA I* Court found them to be invalid, the *CATA I* plaintiffs moved the court for an order vacating the 2008 "skill level" definition of prevailing wages.  On March 21, 2013, the

Court granted the plaintiffs' *vacatur* motion. *See CATA v. Solis*, 933 F. Supp. 2d 700, 711-12 (E.D. Pa. 2013) ("*CATA II*"). The Court remanded the wage rule to DOL and gave the agency thirty days to come into compliance with the Order.

**The 2013 Interim Final Rule**

28.     In response to the *CATA II vacatur* order, DOL and DHS promulgated a joint Interim Final Wage Rule, 78 Fed. Reg. 24,047 (Apr. 24, 2013) (2013 IFR). The 2013 IFR followed the policy set by the 2011 Wage Rule and eliminated the "at the skill level" language from the definition of prevailing wage in 20 C.F.R. § 655.10(b)(2) (2013), 78 Fed. Reg. at 24,061, thereby putting an end to "skill level" prevailing wages.

29.     In contrast to the skill level provisions, the 2013 IFR reversed most of the other policy choices set forth in the 2011 Wage Rule. However, because the 2013 IFR was published as an emergency rule pursuant to 5 U.S.C. § 553(b)(3)(B), 78 Fed. Reg. at 24,055, DOL/DHS offered little explanation for changing its prior policies and the public was not afforded an opportunity to comment on them prior to the immediate implementation of the 2013 IFR.

30.     Among other policy choices in the 2011 Rule reversed by the 2013 IFR was the requirement that employers pay the highest of any applicable OES, CBA, DBA, or SCA wage. The 2013 IFR returned to the 2008 policy of deeming an applicable CBA wage the prevailing wage. In the absence of a CBA wage, the 2013 IFR again gave employers the option to choose between any applicable OES, DBA and SCA wage. 20 C.F.R. § 655.10(b) (2013), 78 Fed. Reg. at 24,053-54, 24,061. (Unsurprisingly employers tended to choose the lowest applicable wage. 80 Fed. Reg. at 24,164).

31.     DOL/DHS explained their decision to return to the 2008 "employer's option" was prompted by the need to act expeditiously to clear the backlog in wage determinations that arose as a result of the CATA II *vacatur* order, but invited public comment on the use of DBA and

SCA wages to make prevailing wage determinations. 78 Fed. Reg. at 24,053-54. The 2013 IFR did not, however, offer a rational connection between the alleged need for expeditious action and the decision to disregard the "highest of"' approach in the duly adopted 2011 Wage Rule.

32.    In addition, despite DOL's findings in the 2011 Wage Rule that employer-provided surveys were not reliable and were used to undercut the OES prevailing wage, the 2013 Rule reversed the 2011 Wage Rule's prohibition on the use of employer-provided surveys when a valid OES, DBA or SCA wage was available.  78 Fed. Reg. at 24,054-55.  Instead, DOL/DHS returned to the 2008 policy of giving employers the choice of relying on employer-provided surveys, even when an applicable OES wage was available. 20 C.F.R. § 655.10(f) (2013), 78 Fed. Reg. at 24,054-55, 24,061.

33.    While DOL and DHS offered no substantive explanation for these actions, it invited comments on the change in policies.  78 Fed. Reg. at 24,053-54.  The comment period for the 2013 IFR closed on June 10, 2013.  78 Fed. Reg. at 24,055.

**Status of 2011 Wage Rule**

34.    At the time of the publication of the 2013 IFR, it was DOL's position that it would proceed to implement the 2011 Wage Rule when the FY2013 Congressional appropriations restriction on implementation of the 2011 Wage Rule was lifted at the end of September 2013.

35.    On July 23, 2013, DOL for the first time published a notice of proposed rulemaking in the Federal Register proposing to indefinitely delay implementation of the 2011 Wage Rule even if the Congressional appropriations restriction on implementation of the 2011 Wage Rule was lifted.  78 Fed. Reg. 44,054 (July 23, 2013).  On August 30, 2013 DOL issued a

notice indefinitely delaying the 2011 Wage Rule even if the Congressional appropriation rider on

implementation of that rule was lifted.  78 Fed Reg. 53,643 (Aug. 30, 2013).

36.    On January 17, 2014, the Consolidated Appropriations Act, 2014, Public Law

113–76, 128 Stat. 5, was enacted.  For the first time in over two years, DOL's appropriations did

not prohibit the implementation or enforcement of the 2011 Wage Rule.

**2014 Notice of Intent To Publish A Notice of Proposed Rule-making**

37.    Nearly a year after publication of the 2013 IFR, DOL published a Federal

Register notice stating that it intended to "publish a notice of proposed rule-making on the proper

wage methodology for the H-2B program, working off the 2011 Wage Rule as a starting point."

79 Fed. Reg. 14,450 (Mar. 14, 2014).  DOL explained that as a result of the appropriations rider

on the 2011 Wage Rule had been lifted,

> the Department has begun the process of determining how to implement that
> rule, keeping in mind the overlap between that rule and the comments
> submitted in connection with the 2013 IFR.  DOL has determined that recent
> developments in the H-2B program require consideration of the comments
> submitted in connection with the 2013 IFR, and that <u>further notice and
> comment is appropriate.</u>

*Id.* at 14453 (emphasis added).  In the meantime the 2013 IFR remained in effect.

**The Third Circuit's Decision In *CATA III***

38.    In May 2014, CATA and other worker organizations filed an APA challenge to

the employer-provided survey provision in § 655.10(f) of the 2013 IFR. *CATA v. Perez,* No.2:14-

02657 (E.D. Pa.).  The district court dismissed the case on the grounds that it was not ripe for

decision by the court, but on December 5, 2014 the Third Circuit reversed and rendered

judgment for the plaintiffs.  *CATA v. Perez*, 774 F.3d 173 (3d Cir. 2014) (*CATA III*).   The Third

Circuit found that "Section 655.10(f) is procedurally invalid **because DOL has not explained**

**why it has been allowing employers to use private wage surveys in prevailing wage**

**determinations when valid OES wage rates are available for the same purpose.**"[3]  *Id.* at 187

(emphasis added).

> 39.    The Third Circuit also found that,

> [g]iven DOL's endorsement of the OES wage as 'among the largest, most comprehensive, and continuous statistical programs of the Federal Government,' 78 F.R. at 24,053; 76 F.R. at 3463; 69 F.R. 77326, 77369 (Dec. 27, 2004), and its finding that the OES survey 'is the most consistent, efficient, and accurate means of determining the prevailing wage rate for the H-2B program," 76 F.R. 3465, . . . **we are satisfied that DOL acted arbitrarily and capriciously when it permitted – and by its policies, structurally encouraged—employer to rely on details of a private survey when there was a valid OES wage survey available for use in determining the prevailing wage for the implicated employment**.

*CATA III*, 774 F.3d at 189 (emphasis added). The irrationality of DOL's actions was especially

clear given the fact that DOL acknowledged that "employer surveys are generally unrealistic"

and that "employers typically provide private surveys when the result it to lower wages below

the prevailing wage rate" with the result that allowing such surveys has "perpetuated a system by

which employers are benefitted financially by submitting private surveys to justify wages lower

than the OES wages." *See id.*

> 40.    The *CATA III* court also found § 655.10(f) to be substantively arbitrary because it

"permits employers who can afford private surveys to bring H-2B workers into the country for

employment at lower wages than employers who cannot afford such surveys and who therefore

must offer the higher OES wage." *Id.* at 190.

> 41.    Finally, the *CATA III* court vacated 20 C.F.R. § 655.10(f) and directed that private

surveys no longer be used to set prevailing wages except in the two situations identified in the

2011 Wage Rule – i.e., "where an otherwise applicable OES survey does not provide any data

---

[3] The employer survey provision had its origins in 2008—a rule with respect to which DOL refused to consider public comments on its wage policies—and the provision was re-adopted in the 2013 IFR, an emergency rule in which DOL allowed no comments and offered no explanations.

for an occupation in a specific geographical location, or where the OES survey does not accurately represent the relevant job classification." *Id.* at 191.

42.    In response to the *CATA III* decision, DOL immediately ceased accepting prevailing wage rates set by employer-provided surveys.

**The 2015 Wage Rule**

43.    Four months after the *CATA III* decision DOL and DHS jointly issued the 2015 Wage Rule challenged in this case.  80 Fed. Reg. 24,146 (Apr. 29, 2015) ("2015 Wage Rule"). DOL and DHS issued the 2015 Wage Rule without publishing the proposed rule that had been promised in the 2014 Notice <u>and</u> without treating the April 29, 2015 wage rule as an interim final rule with a subsequent public comment opportunity.

44.    The decision to issue the 2015 Wage Rule as a final rule <u>without</u> opportunity for further public comment differs significantly from the handling by DOL and DHS of a broader rule for the H-2B program issued on the same date which was issued as an interim final rule. Temporary Non-Agricultural Employment of H–2B Aliens in the United States, 80 Fed. Reg. 24,042 (Apr 29, 2015) ("2015 H-2B General IFR"). This was true despite the fact that certain significant aspects of the 2015 General IFR impact on prevailing wage rates.

45.    According to the Departments, the Court's ruling in *Perez v. Perez*, No. 3:14-cv-682 (N.D. Fla. Mar. 4, 2015) (*Perez*), necessitated the immediate publication of a <u>final</u> rule.  80 Fed. Reg. at 24,151.  This was untrue.

46.    Nothing in *Perez* would have barred the Departments from issuing an interim rule pending an opportunity for further public comment on proposed changes as the Departments did with the 2015 H-2B General IFR.

47.     The *Perez* decision did <u>not</u> invalidate the 2013 IFR since it had been issued jointly by DOL and DHS, so DOL and DHS could have given the public an opportunity to submit public comments before:

a.      Again permitting employer provided wage surveys seeking wage rates lower than the OES average wage rate for the occupation in the area of employment after the 2013 IFR provisions permitting such surveys had been invalidated by the Third Circuit in *CATA III*.

b.      Permitting employers whose wage surveys had been rejected by DOL after December 5, 2014 as a result of the Third Circuit *CATA III* decision from resubmitting those same wage surveys so long as they were "state conducted" and the survey did not only seek to determine wage of entry-level workers.

c.      Permitting employers in the seafood industry where workers could enter in different periods to <u>reduce previously certified</u> H-2B OES hourly wage rates and pay lower wage rates established in "state conducted" wage surveys for workers entering the U.S. after such "state conducted" wage survey rates were approved by DOL.

d.      Permitting employer surveys where there was no valid state level OES wage rate for an occupation, even where there were either SCA or DBA occupational wage rates covering the duties of such jobs.

**<u>CBA Wage Rates</u>**

48.     The 2015 Wage Rule continues the 2013 IFR policy of treating a CBA wage as the prevailing wage regardless of its level. 20 C.F.R. § 655.10(b)(1) (2015), 80 Fed. Reg. at 24,184.  The 2013 IFR was an unexplained change in the 2011 policy of only using a CBA wage if it was higher than the applicable OES, DBA or SCA wages.  The explanation offered in the

current rule for reversing the 2011 Wage Rule and continuing the 2013 IFR policy, 80 Fed. Reg. 24,175-76, is arbitrary and capricious.

49.    Although the 2015 Wage Rule purports at § 655.10(b)(1) to restrict such CBA's to those "…negotiated at arms' length between the union and the employer," the Departments gave the public no opportunity to comment on the experience since the close of the comment period on the 2013 IFR in June 2013 with DOL's inability to apply this requirement in relationship to 38 H-2B prevailing wage determinations in the for SOC Code 39-3091 "Amusement and Recreation Attendants" issued between November 20, 2013 and May 9, 2014 that resulted in the payment of grossly substandard wages to nearly 1,000 H-2B workers in 2014 and is the subject of pending National Labor Relations Board unfair labor practices against those employers and the "labor organization" created with the direct assistance of the employers' H-2B agent processing their applications with DOL and DHS for such workers. *See* NLRB Case numbers:  01-CB-130161, 01-CA-129948, 01-CA-129950, 01-CA-129951, 01-CA-129960, 01-CA-129964, 01-CA-129987, 01-CA-129990, 01-CA-129998, 01-CA-130002, 01-CA-130004, 01-CA-130009, 01-CA-130013, 01-CA-130018, 01-CA-130022, 01-CA-130027, 01-CA-130031, 01-CA-130058, 01-CA-130061, 01-CA-130063, 01-CA-130072, 01-CA-130078, 01-CA-130082, 01-CA-130083, 01-CA-130086, 01-CA-130106, 01-CA-130111, 01-CA-130116, 01-CA-130120, 01-CA-130122, 01-CA-130124, 01-CA-130126, and 01-CA-130134.

### Paying the Higher of DBA, SCA or OES Rates

50.    The 2015 Wage Rule deletes all use of DBA and SCA wages as prevailing wages and uses the OES survey as the <u>exclusive</u> federal survey for setting prevailing wages. 80 Fed. Reg. at 24,163-5.

51.     This represents a change from the 2011 Wage Rule, which used DBA and SCA wages to set the prevailing wage for an occupation when either of those surveys was higher than the applicable OES wage.

52.     From 1967 to 2005, even if the job opportunity for which a prevailing wage determination was requested was not itself directly subject to a Service Contract Act ("SCA") or the Davis-Bacon Act ("DBA") wage determination, the employer was required to offer at least that wage if there was a current DBA or SCA wage determination for that occupation in the same geographic area.

53.     In 2005 DOL issued informal guidance documents for the H-2B program eliminating the long standing requirement to pay wages no less than those required under the SCA or the DBA and instead permitting employers to optionally use these sources when they would result in lower wage rates.

54.     The 2008 Rule continued this approach without explanation. In *CATA I* Judge Pollak found that DOL's decision to make use of DBA and SCA wages voluntary, rather than mandatory as DOL required prior to 2005, was unexplained and arbitrary. *CATA I*, 2010 WL 3431761, at *19.

55.     In the promulgated the 2011 Wage Rule DOL stated:

> In situations where there is a SCA or DBA wage determination or collectively bargained wage rate in addition to the OES determination, it is compatible with our responsibility to avoid adverse effect to mandate that the employer pay the higher of these determinations. Such determinations are based on real wages being paid to workers in these areas for the same kind of work for which H–2B workers are sought—in other words, the labor pool of those U.S. workers the would-be H– 2B employer should be seeking. <u>By requiring the highest wage among these available, validated sources, the Department is guaranteeing that the jobs are offered to available workers at wages that do not create an adverse effect</u>.

*See* 76 Fed. Reg. 3455.

56.    The 2015 Wage Rule acknowledges that "SCA and DBA wage rates constitute sound and reliable evidence of a wage that would 'not adversely affect US. workers similarly employed.'" 80 Fed. Reg. at 24,165.  Nevertheless it eliminates their use "largely [based] on DOL's challenges conforming the SCA and DBA taxonomies [occupational classification systems] and wage determinations to requests for prevailing wages in the H-2B program, including to avoid the potential for inconsistent prevailing wage determinations in the H-2B program."  80 Fed. Reg. at 24,163.  However, DOL/DHS never gave the public notice of these administrative difficulties conforming DBA and SCA wages to the H-2B program making it impossible for the public to comment on that justification.

57.    DOL's claims of administrative inconvenience primarily relate to DOL's experience since the 2013 IFR increasing the OES wage to the average wage rate for that occupation in the area of employment with the "employer choice" option to seek to inappropriately apply a claimed <u>lower</u> DBA or SCA wage rate for jobs which DOL determined did not meet the DBA or SCA occupational classifications for those jobs.

58.    Federal government agencies jointly operate a website "Wage Determinations OnLine.gov" (http://www.wdol.gov) providing information on the Davis Bacon and related acts and Service Contract Act wage determinations.  The frequently asked questions (FAQ) on that website explain the appropriate scope of occupations subject to Davis Bacon and related acts prevailing wage determinations.  That website describes the scope of such wage determinations as follows in questions 4 and 5:

> Q4.  What is the Davis-Bacon Act (DBA)?
>
> Enacted in 1931, the DBA is intended to protect communities and workers from the economic disruption caused by competition arising from non-local contractors coming into an area and obtaining federal construction contracts by underbidding local wage levels.  The DBA, as amended, requires that each contract over $2,000 to which the United States or the District of Columbia is a party for the

construction, alteration, and/or repair (including painting or decorating) of public buildings or public works shall contain a clause setting forth the minimum wages to be paid to various classes of laborers and mechanics employed under the contract.

Q5.  What does the Davis-Bacon Act require?

Under the provisions of the DBA, contractors or their subcontractors are required to pay laborers and mechanics employed directly upon the site of the work no less than the locally prevailing wages and fringe benefits paid on projects of a similar character.  The DBA directs the Department of Labor to determine such local prevailing wage rates (WDs).  The WDs, also known as "general schedules", are then to be placed in covered contracts by Federal agency contracting officials.

*See* http://www.wdol.gov/faqs.aspx#Q4

59.    DOL's FY2015 public disclosure information for the most recent period October 1, 2014 to March 31, 2015 provides information for the first time (unlike FY2014 and prior years) indicating the employer requested prevailing wage source and the prevailing wage source determined by DOL to be appropriate.  *See* FY 2015 Disclosure File for Prevailing Wage (PWD_FY2015_Q2.xlsx) at:  http://www.foreignlaborcert.doleta.gov/performancedata.cfm.

60.    Analysis of that data for H-2B prevailing wage determinations establishes that in that time period establishes that in 539 cases involving employer requests to use claimed DBA prevailing wage rates and DOL determined that in more than 32% of those cases (173 cases) the requested DBA rate was inapplicable to the job.  Significantly only 143 of the cases (27%) involved occupations in SOC Group 47 "Construction and Extraction Occupations" which would appear to have been appropriate for DBA determinations.

61.    Further analysis by North American Industry Classification System (NAICS) codes of the industry of the petitioning employer establishes that only 113 of the employers (21%) petitioning for H-2B prevailing wage determinations establishes in that time period were coded as in NAICS Group 23 covering construction industries.

62.     Under the "employer choice" option of usage of DBA wage rates employers inappropriately sought to have DOL use low unskilled DBA wage rates.  By contrast if DOL utilized the 2011 Wage Rule requirement to pay the <u>higher</u> of DBA or OES wage rates for occupations in the construction industry no employers would seek to inappropriately use DBA rates for occupations for which it was inappropriate and this would greatly reduce DOL's administrative burden of applying the DBA occupational "taxonomy" to such jobs.

63.     Review of DOL H-2B labor certification data for FY2014 indicates that H-2B employers were approved on 480 employer H-2B labor certification applications to employ 8,057 workers in 32 different construction occupations (SOC Codes 47-1011 through 47-4091) in 42 different states.  The states in which the greatest numbers of H-2B workers in construction occupations were employed in that period were: Texas (2,697), Louisiana (870), Arizona (497), Nebraska (375), South Dakota (372), and Mississippi (338), North Dakota (280), Illinois (279), North Carolina (262), Colorado (241), and Pennsylvania (156).

64.     Review of the OES SOC Codes for the construction related occupational codes for H-2B positions approved reflects that it does include numerous skilled construction crafts for which there are established valid DBA rates reflecting the prevailing wage rates required to avoid an adverse impact on the wage of U.S. workers.

65.     DOL and DHS indicated in the preamble discussion of the 2015 Wage Rule that they were considering comments on usage of DBA and SCA wages submitted in response to the 2008 NPRM, 2010 NPRM for the 2011 Wage Rule, and the 2013 IFR.  Numerous detailed comments were submitted in these rulemaking proceedings as to the importance of payment of no less than DBA and SCA wage rate determinations for protecting the wages of U.S. workers.

66.     Review of the operation of the DBA and comments submitted in relationship to it clearly establish that the "taxonomy" of DBA wage determinations is directly related to the structure of craft based labor organization in the construction industry.

67.     While the adoption of the average OES wage rate by OES SOC codes as the primary basis for determining H-2B wage rates in the 2011 Wage Rule, the 2013 IFR, and the 2015 Wage Rule has lessened the prior disconnect between SCA wage rates and OES wage rates, the "taxonomy" of DBA construction industry jobs is critical to avoiding a direct adverse impact on the wages of U.S. workers in those craft jobs.

68.     The Departments' decision to reject the 2011 Wage Rule requirement to pay construction occupation (OES SOC Group 47) DBA wage rates where they are higher than OES wage rates is substantively arbitrary when the only basis asserted by DOL for this is administrative difficulties caused by the history of employer misuse of the "employer option" to pay the lowest wage rate in relationship to DBA wage rates and the  public has been given no opportunity to comment on that never before stated rationale.

**Employer Provided Wage Surveys**

69.     The 2015 Wage Rule adopts a revised version of § 655.10(f), the 2013 employer-provided survey rule struck down by the Third Circuit in *CATA III*.  80 Fed. Reg. at 24,184 codified at 20 C.F.R. § 655.10(f) (2015).  **However, like the invalid 2013 version, § 655.10(f)(1)(i) (2015) once again allows employers to rely on employer-provided surveys where a valid OES wage is available.**  The only change made in the 2013 IFR that was struck down by the Third Circuit is that, instead of allowing any kind of employer-provided survey to substitute for the applicable OES wage, the 2015 Wage Rule requires that employer-provided surveys substituting for a valid OES wage be "independently conducted and issued by a state

including any state agency, state college, or state university" 80 Fed. Reg. at 24,184 codified at

20 C.F.R. § 655.10(f)(1)(i) (2015).

70.     Despite the fact that the Third Circuit struck down the previous version of

§ 655.10(f) for lack of a reasoned explanation for allowing use of employer surveys where a

valid OES wage was available, **the 2015 Wage Rule offers no explanation whatsoever for**

**continuing to allow use of employer-provided surveys in that situation**.  DOL/DHS opine

that state-conducted surveys are likely to be more reliable than privately-conducted surveys, but

nowhere does it explain why it is appropriate to allow the use of any kind of substitute survey

when a valid OES survey wage is available, particularly where DOL/DHS acknowledge that

even "state-conducted" substitute surveys will be used to undercut the OES wage. 80 Fed. Reg.

at 24,171.  This is the same error that the Third Circuit cited in striking down the prior version of

§ 655.10(f).  *See* CATA *III*, 774 F.3d. at 189.

71.     20 C.F.R. § 655.10(f)(1)(i) is also arbitrary and capricious because it promotes

inconsistent prevailing wages among employers in the same occupation and area of employment

contrary to DOL's stated policy.

72.     DOL/DHS never gave the public notice that they were contemplating using state-

conducted surveys based on definitions of occupations more narrow than the established OES

occupational definitions and permitting such surveys to be based overwhelmingly on surveys of

H-2B employers historically paying depressed wage rates making it impossible for the public to

comment on these decisions.

73.     DOL/DHS never gave the public notice that DOL/DHS would define "state-

conducted" surveys so broadly as to include surveys conducted by state universities and colleges

making it impossible for the public to comment on this decision or to provide DOL/DHS

comments on the potential influence of industry influence through funding and otherwise of staff as such state universities and college contracted to provide such surveys.

74.    The 2015 Wage Rule allows for the use of employer-provided surveys in two other circumstances: (1) when there is no OES wage for the occupation and geographic area or (2) when the job opportunity is not included in the OES's occupational classification system or is only included as an "all other" category. 80 Fed. Reg. at 24,184 codified at 20 C.F.R. §§ 655.10(f)(1)(ii) & (iii) (2015).  Under these two provisions, an employer-provided survey need only be performed by "an independent third party," as defined by the regulations; there is no requirement that they be performed by a state entity. *Id.*

75.    While the provisions in §§ 655.10(f)(ii) and (iii) (2015) are similar to the two permissible uses of employer-provided surveys set forth in the 2011 Wage Rule that were upheld by the *CATA III* court, they are different in one critical respect:  The 2011 Wage Rule only allowed use of employer-provided surveys in those two situations if, in addition to there being no valid OES wage, there was also <u>no applicable DBA or SCA wage rate</u>. The 2015 Wage Rule reverses course and allows employers to go immediately to private surveys in the absence of a valid OES wage, without first looking to see if there is an applicable DBA or SCA wage.  The 2015 Wage Rule offers no rational explanation for that change in policy.  Nor did DOL/DHS give interested parties adequate notice of that change in policy making it impossible for the public to comment on the change.

**<u>Impact Of Refusal to Use SCA Rates for Forest and Conservation Workers and
Requirement to Use Employer Wage Surveys Without a Valid OES Wage Rate</u>**

76.    Significantly, in the preamble discussion to the 2015 Wage Rule, DOL/DHS state publicly for the first time that DOL had identified two frequently used H-2B SOC classifications -- SOC Codes 45-4011 (Forest and Conservation Workers) and 45-3011 (Fishers and Related

Fishing Workers) -- for which it had determined there were <u>no</u> valid OES wages in many of the states in which employers sought to use H-2B workers. *See* 80 Fed. Reg. at 24,169.

77.     Employers of Forest and Conservation Workers have historically used SCA rates for jobs for which OES wage rates were not available, but will be effectively forced to provide employer wage surveys for these jobs under the 2015 Wage Rule if they do not want to pay wages based on a national OES rate,

78.     DOL sought to minimize the significance of this deficiency in OES data by stating <u>inaccurately</u> that under its analysis of FY2013 data "…certified H-2B applications involving those SOC codes combined constitute <u>only 5 percent</u> of all such certified applications." *Id.* A review of DOL disclosure data for FY2013 and FY2014 indicates the following:

| Certified | FY13 Workers | FY 13% | FY 14 Workers | FY 14% |
|---|---|---|---|---|
| Certified Total | 82,313 | | 93,689 | |
| 45-3011 (Fishers and Related Fishing Workers) | 1,282 | | 1,397 | |
| 45-4011 (Forest and Conservation Workers) | 9,573 | | 9,602 | |
| Total Selected SOC | 10,855 | 13.2% | 10,999 | 11.7% |

*See* http://www.foreignlaborcert.doleta.gov/performancedata.cfm

79.     Analysis of DOL H-2B certification data for FY2014 establishes that <u>9,602</u> H-2B positions were certified for employment in SOC Code 45-4011 (Forest and Conservation Workers) and that <u>1,397</u> H-2B positions were certified for employment in SOC Code 45-3011 (Fishers and Related Fishing Workers). *See* Exhibit "A" annexed to this Complaint and incorporated herein. DOL's FY2014 summary data sheet for the H-2B program listed Forest and Conservation Workers

as the second most commonly certified H-2B program occupation.  *See*

http://www.foreignlaborcert.doleta.gov/pdf/H-2B_Selected_Statistics_FY2014_Q4.pdf.

80.    Analysis of the recently released OES May 2014 wage survey data indicates that

at least 11 states in which H-2B Forest and Conservation Workers were certified by DOL to

work as H-2B workers in FY2014 did not have state level OES data sufficient for BLS to

determine prevailing wage rates.  *See* Exhibit "A" annexed to this Complaint and incorporated

herein.

81.    The deficiency in BLS OES survey data for these jobs is due to the decision of

DOL to omit the industries employing virtually all of these workers from the BLS OES survey.

DOL does not conduct the OES survey in the following industries employing these workers:

NAICS 1131 - Timber Tract Operations; NAICS 1132 - Forest Nurseries and Gathering of Forest

Products; NAICS 114 - Fishing, Hunting, and Trapping; NAICS 1153 - Support Activities for

Forestry.  *See*  http://www.bls.gov/oes/oes_ques.htm and Exhibit "A" annexed to this Complaint

and incorporated herein at pp. Ex. A, pp. 2-3.

82.    Exhibit A annexed hereto and incorporated herein at Ex. A, pp. 4 demonstrates

that 96% of the industries employing H-2B workers as Forest and Conservation Workers are in

industries excluded from the BLS OES survey.

83.    Exhibit A annexed hereto and incorporated herein at Ex. A, pp. 5 that the

nationwide BLS OES data for Forest and Conservation Workers is drawn overwhelmingly from

industries that are unrelated to the industries seeking H-2B Forest and Conservation Workers.

84.    DOL's refusal to allow employers of  Forest and Conservation Workers to base

wage rates on DOL Wage and Hour Division (WHD) determinations under the Service Contract

Act (SCA) for such workers even in the absence of valid OES wage rates is even more arbitrary

27

in light of DOL's discussion of public comments (including those submitted on behalf of plaintiff organizations) urging DOL to utilize SCA job classifications and wage rates for such workers as more accurate than OES data for those positions. *See* 80 Fed. Reg. at 24,161-62.

85.    The only explanation DOL gives for refusing to use SCA rates for Forest and Conservation Workers for whom OES data is clearly deficient is the administrative difficulties it encounters it matching the job duties of forestry workers to the SCA classification system. *See* 80 Fed. Reg. at 24,162.

86.    Within DOL, the Wage and Hour Division which administers the Service Contract Act, has a Division of Wage Determinations, Branch of Service Contracts Act Wage Determinations with knowledgeable civil service staff headed by Sandra W. Hamlett, Branch Chief, Branch of Service Contracts Act Wage Determinations available to respond to queries from the DOL ETA Office of Foreign Labor Certification (OFLC) National Prevailing Wage Center staff. *See* http://www.dol.gov/whd/whdkeyp.htm.

87.    A review of FY2014 H-2B prevailing wage determinations reflects that DOL approved 232 requests by forestry industry employers to make prevailing wage determinations based on SCA rates for occupations within SOC Code 45-4011 (Forest and Conservation Workers) and that only <u>three</u> SCA codes were used for the overwhelming majority of these jobs with three additional SCA codes used for a total in 10 cases. That data reflects the following SCA codes were determined by DOL to be appropriate:

| # | SCA | SCA Title | H-2B PWD Cases FY14 |
|---|-----|-----------|---------------------|
| 1 | 08370 | Tree Planter | 107 |
| 2 | 08010 | Brush / Precommercial Thinner | 78 |
| 3 | 08250 | General Forestry Laborer | 37 |
| 4 | 08310 | Slash Piler/Burner | 6 |
| 5 | 08400 | Tree Planter, Mechanical | 3 |

| # | SCA | SCA Title | H-2B PWD Cases FY14 |
|---|---|---|---|
| 6 | 08190 | Forestry Technician | 1 |

See "PW_Case_Data_FY2014.xlsx" available at:

http://www.foreignlaborcert.doleta.gov/performancedata.cfm and individual labor certification

ETA Forms 9142 available at:

https://icert.doleta.gov/index.cfm?event=ehLCJRExternal.dspAdvCertSearch.

88.    Annexed hereto and incorporated herein as Exhibit "B" are the following:

a.    Job Duties for each of the above SCA Job Titles and the usage of them by

DOL in FY2014 (Ex. B, p. 1).

b.    DOL ETA H-2B FY2014 Forest and Conservation Workers SOC Code

45-4011 Prevailing Wage Determinations Based On Service Contract Act and Current

2015 SCA Rates by State (Ex. B, pp. 2-3)

89.    In most states utilizing H-2B Forest and Conservation Workers, the DOL WHD

issues SCA wage rate determinations which provide accurate and reliable wage rates for forestry

jobs for which most H-2B Forest and Conservation workers are used. See "Exhibit B"  at 2-3 and

http://www.wdol.gov/sca.aspx.

**Employer Provided Wage Surveys Based on Previously Depressed H-2B Wages**

90.    The 2015 Wage Rule also requires all employer-provided surveys to include data

from at least 3 employers and 30 workers working in the occupation for which H-2B certification

is sought. Section 655.10(f)(4)(ii) (2015); 80 Fed. Reg. at 24,184. The preamble to the regulation

states that in meeting these minimums, employer-provided surveys must "collect data without

consideration of the immigration status of non-immigrant workers." 80 Fed. Reg. at 24,172.

This is a change in policy from the 2011 Wage Rule, which specifically prohibited

employer-provided surveys from "includ[ing] the wages of H-2B workers or other non-

immigrant workers in calculating the wage." 76 Fed. Reg. at 3467.  In 2011, DOL excluded such data "to ensure that wages of H-2B workers do not establish the parameters by which wages of all workers would be measured, as this could have the net effect of creating a permanent subset of lower wages in that occupation or area of employment." 76 Fed. Reg. at 3467.

91.     In reversing the 2011 policy and requiring the <u>inclusion</u> of non-immigrant workers in employer-provided surveys, the 2015 Wage Rule does not explain why the concerns DOL expressed in 2011 are not still valid.  To the contrary, DOL/DHS admit that employer-provided surveys are likely to be used in occupations where H-2B workers predominate.  80 Fed. Reg. at 24,172 ("We are concerned that requiring the exclusion of nonimmigrant workers would effectively bar employers from using such wage surveys.").

92.     DOL justifies changing its 2011 policy with respect to surveying H-2B workers on the grounds that the 2011 Wage Rule was not based on empirical data and commenters did not provide empirical data.  DOL/DHS also argues, erroneously, that surveying H-2B workers is consistent with the OES survey and commercial surveys. These justifications are arbitrary and capricious.  Moreover, DOL/DHS failed to give the public notice of justifications thereby precluding the public from presenting meaningful criticisms of DOL/DHS's reasoning.

### FIRST CAUSE OF ACTION
### (APA CHALLENGE TO 20 C.F.R. § 655.10(b)(1))

93.     For the reasons set forth above, 20 C.F.R. § 655.10(b)(1) (2015), insofar as it makes a CBA wage the prevailing wage even when that wages is lower than an applicable OES wage, violates the Administrative Procedure Act, 5 U.S.C. § 706(2) (A) and (D) because DOL/DHS did not provide adequate notice to allow the public to comment on the rule, DOL/DHS has not provided a rational explanation for the change in policy represented by the Rule, and the Rule is arbitrary, capricious, and contrary to law.

## SECOND CAUSE OF ACTION
### (APA CHALLENGE TO 20 C.F.R. § 655.10(b))

94.    For the reasons set forth above, 20 C.F.R. § 655.10(b) (2015), insofar as it

eliminates use of DBA or SCA wages as the prevailing wage whenever an applicable DBA or

SCA wage is the highest of any applicable CBA, OES, DBA or SCA wage, violates the

Administrative Procedure Act, 5 U.S.C. § 706(2) (D) because DOL/DHS did not provide

adequate notice to allow the public to comment on the change in policy set forth in the rule.

## THIRD CAUSE OF ACTION
### (APA CHALLENGE TO 20 C.F.R. § 655.10(f)(1)(i))

95.    For the reasons set for the above, 20 C.F.R. § 655.10(f)(1)(i) (2015), which

permits employers to use state-conducted employer-provided surveys to set the prevailing wage

even when a valid OES, DBA, or SCA wage is available violates the Administrative Procedure

Act, 5 U.S.C. § 706(2)(A) and (D) because DOL/DHS did not provide adequate notice to allow

the public to comment on the rule, DOL/DHS has never provided a reasoned explanation for the

rule, and the rule is substantively arbitrary, capricious, and contrary to law.

## FOURTH CAUSE OF ACTION
### (APA CHALLENGE TO 20 C.F.R. §§ 655.10(f)(1)(ii) & (iii))

96.    For the reasons set forth above, 20 C.F.R. §§ 655.10(f)(1)(ii) & (iii) (2015), which

permits use of employer-provided surveys to set the prevailing wage in the absence of a valid

OES wage, violates the Administrative Procedure Act, § 706(2)(A) and (D) because DOL/DHS

did not provide adequate notice to allow the public to comment on the rules, DOL/DHS has not

provided a reasoned explanation for the rules, and the rules are substantively arbitrary,

capricious, and contrary to law.

## FIFTH CAUSE OF ACTION
### (APA CHALLENGE TO 20 C.F.R. § 655.10(f)(4))

97.     For the reasons set forth above, 20 C.F.R. § 655.10(f)(4), which requires

employers to include H-2B and other non-immigrants in employer-provided surveys, violates the

Administrative Procedure Act,  5 U.S.C. §§ 706(2)(A) & (D) because DOL/DHS failed to

provide adequate notice to allow the public to comment on the rules, failed to provide a reasoned

explanation for the requirement and the requirement is arbitrary, capricious, and contrary to law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Enter a temporary restraining order and preliminary injunctive prohibiting

DOL from approving employer wage surveys submitted under 20 C.F.R. §

655.10(f)(1)(i);

2.     Enter a final order declaring unlawful in violation of the APA, 5 U.S.C. §

706(2) (A) and (D) and vacating:

a.  § 655.10(b)(1), which makes a Collective Bargaining Agreement

(CBA) wage the prevailing wage whenever one exists for the job;

b.  § 655.10(f)(1)(i) which allows use of state-conducted

employer-provided surveys as an alternative to a valid OES wage;

c.  § 655.10(f)(1)(ii) and (iii) which allows use of any kind of

employer-provided survey when there is no valid OES wage;

d.  § 655.10(f)(4)(ii) which requires employer-provided surveys to survey

H-2B and other non-immigrant workers; and,

e. § 655.10(b) which eliminates use of an applicable DBA or SCA wage

as the prevailing wage when either is higher than the OES wage as was the policy

in the 2011 Wage Rule.

3.     Award Plaintiffs their attorneys' fees pursuant to the Equal Access To

Justice Act;

4.     Grant such other and further relief as this Court deems appropriate.

Dated:  June 12, 2015

Respectfully Submitted,


 s:/ Arthur N. Read
Arthur N. Read
       NJ Attorney No. 030561979
Friends of Farmworkers, Inc.
699 Ranstead St. Ste. 4
Philadelphia, PA 19106-2334
Telephone: (215) 733-0878
Facsimile: (215) 733-0876
Email: aread@friendsfw.org

Edward Tuddenham
228 W. 137th St.
New York New York 10030
Telephone: 212-234-5953
Facsimile: (512) 532-7780
Email: etudden@prismnet.com

Meredith B. Stewart
Southern Poverty Law Center
1055 St. Charles Avenue, Suite 505
New Orleans, LA 70130
Telephone: (504) 526-1497
Facsimile: (504) 486-8947
Email: meredith.stewart@splcenter.org

D. Michael Dale
Northwest Workers' Justice Project
812 S.W. Washington, Suite 1100
Portland, OR 97205
Telephone: (503) 535-8545
Fax: (503) 946-3089
Email: michael@nwjp.org

Attorneys for Plaintiffs