NOT FOR PUBLICATION                                    (Doc. Nos. 21 & 27)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| _____ | : | |
| COMITÉ DE APOYO A LOS | : | Civil No. 15–4014 (RBK/JS) |
| TRABAJADORES AGRÍCOLAS, et al., | : | |
| | : | **OPINION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| Thomas E. PEREZ, | : | |
| Secretary of Labor, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**KUGLER**, United States District Judge:

Plaintiffs Comité de Apoyo a los Trabajadores Agrícolas ("CATA"), Pineros y

Campesinos Unidos del Noroeste ("PCUN"), Northwest Forest Worker Center ("NFWC"), and

Antonio Rivera Martinez bring this suit under the Administrative Procedure Act ("APA") against

the following Defendants: Thomas E. Perez, in his official capacity as United States Secretary of

Labor; United States Department of Labor; Portia Wu, in her official capacity as Assistant

Secretary, Employment and Training Administration; Jeh Charles Johnson, in his official

capacity as United States Secretary of Homeland Security; and León Rodriguez, in his official

capacity as Director of the United States Citizenship and Immigration Service. This matter

comes before the Court upon the parties' Cross-Motions for Summary Judgment (Doc. Nos. 21

and 27), pursuant to Federal Rule of Civil Procedure 56. Because Plaintiffs do not meet their

burden to raise a genuine issue of material fact as to standing, Defendants' Motion (Doc. No. 27)

is **GRANTED** and Plaintiffs' Motion (Doc. No. 21) is **DENIED.**

## I.      BACKGROUND

Plaintiffs bring an APA challenge to certain provisions of the Final Rule entitled "Wage Methodology for the Temporary Non-Agricultural Employment H-2B Program." 80 Fed. Reg. 24146 (Apr. 29, 2015) ("2015 Wage Rule"). *See* Pls.' Br. at 1; *see also* Compl. at 1–3 (Doc. No. 1) (filed June 12, 2015). Plaintiffs challenge the following provisions of the 2015 Wage Rule: 20 C.F.R. §§ 655.10(b)(1)–(2), 655.10(f)(1)(i)–(iii), 655.10(f)(4). *See* Pls.' Br. at 1–2. Plaintiffs request that this Court vacate and remand the relevant provisions of the 2015 Wage Rule. *See* Pls.' Br. at 50. Defendants oppose Plaintiffs' motion and cross-move for summary judgment, asserting that Plaintiffs lack standing, that Plaintiffs' claims are not ripe, and that no provision of the 2015 Wage Rule violates the APA. *See generally* Defs.' Br.

This case is yet "another step in a long-running controversy concerning the administration of the H-2B program." *Comité de Apoyo a los Trabajadores Agrícolas v. Perez*, 774 F.3d 173, 177 (3d Cir. 2014) (*CATA* III). Previous opinions by the Third Circuit and other district courts have detailed the relevant factual background and procedural history. *See id.*; *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, Civ. No. 09–0240, 2010 WL 3431761, at *1–*4 (E.D. Pa. Aug. 30, 2010) (*CATA* I); *Comité de Apoyo a los Trabajadores Agrícolas v. Solis*, 933 F. Supp. 2d 700, 703–09 (E.D. Pa. 2013) (*CATA* II); *La. Forestry Ass'n, Inc. v. Solis*, 889 F. Supp. 2d 711, 715–20 (E.D. Pa. 2012), *aff'd sub nom. La. Forestry Ass'n Inc. v. Secretary, U.S. Dep't of Labor*, 745 F.3d 653 (3d Cir. 2014).

### A.      The H-2B Program

The H-2B program allows employers in the United States to "arrange for the admission of foreign workers ('H-2B workers') into the United States to perform temporary unskilled non-agricultural work." *CATA* III, 774 F.3d at 177. The H-2B program "balances employers'

temporary need for unskilled foreign workers against the need to protect United States workers' employment, salaries, and working conditions." *Id.* The United States Department of Labor ("DOL") and the United States Department of Homeland Security ("DHS") jointly administer the H-2B program. 20 C.F.R. §§ 655.1, 655.2.

An employer seeking to admit foreign workers ("H-2B workers") into the United States under the H-2B program must register, obtain a prevailing wage determination ("PWD"), and file an Application for Temporary Employment Certification. *See id.* § 655.15. To register, an employer must establish that its need for temporary, non-agricultural work is "justified as either a one-time occurrence, a seasonal need, a peakload need, or an intermittent need[.]" *Id.* § 655.11(a)(3). If an employer's H-2B Registration is approved, that employer "is authorized for the specified period of up to 3 consecutive years" to file an Application for Temporary Employment Certification. *Id.* § 655.12(a).

Before filing an Application for Temporary Employment Certification, a registered employer must receive a PWD from the National Prevailing Wage Center ("NPWC") *Id.* §§ 655.5, 655.10(c). Under the H-2B program, an employer must pay at least the PWD or the Federal, State, or local minimum wage, whichever wage is highest. *Id.* § 655.10(a). Plaintiffs challenge the regulations that govern how the NPWC determines the prevailing wage.

### B.    Prevailing Wage Determinations

Section 655.10(b) governs how the NPWC determines the prevailing wage. Section 655.10(b)(1) provides that where a job opportunity is covered by a collective bargaining agreement ("CBA"), the CBA wage is the prevailing wage. Section 655.10(b)(2) provides that, in the absence of a CBA wage, the prevailing wage shall be determined by the Bureau of Labor

Statistics ("BLS") Occupational Employment Statistics Survey ("OES"), "unless the employer

provides a survey acceptable" under 20 C.F.R. § 655.10(f).

Section 655.10(f)(1) provides that, in the absence of a CBA wage rate, the NPWC will

consider an employer-provided survey in determining the prevailing wage "only if the employer

submission demonstrates that the survey falls into one of the . . . categories" outlined in Section

655.10(f)(1)(i) through (iii). Section 655.10(f)(1)(i) allows the NPWC to consider an employer-

provided survey if "[t]he survey was independently conducted and issued by a state, including

any state agency, state college, or state university[.]" Section 655.10(f)(1)(ii) allows the NPWC

to consider an employer-provided survey "submitted for a geographic area where the OES does

not collect data, or in a geographic area where the OES provides an arithmetic mean only at a

national level for workers employed in the SOC[.]" Section 655.10(f)(1)(iii) allows the NPWC to

consider an employer-provided survey if "[t]he job opportunity is not included within an

occupational classification of the SOC system; or [t]he job opportunity is within an occupation

classification of the SOC system designated as an 'all other' classification."[1]

Section 655.10(f)(4) provides that, where an employer submits a permissible category of

survey, "the employer must submit . . . specific information about the survey methodology,

including such items as sample size and source, sample selection procedures, and survey job

descriptions, to allow a determination of the adequacy of the data provided and validity of the

statistical methodology used in conducting the survey." The employer must also provide certain

attestations, as outlined in Section 655.10(f)(4)(i) through (v).

---

[1] The SOC system is the BLS's Standard Occupational Classification ("SOC") system.

C.      **Standing**

To provide evidence of standing, Plaintiffs submitted affidavits from the following individuals: Plaintiff Antonio Rivera Martinez ("Plaintiff Rivera"); Diana Karen Luna, a summer intern with Friends of Farmworkers, Inc.; Nelson Carrasquillo, Executive Director of CATA; Carl Wilmsen, Executive Director of NFWC; Ramon Ramirez, President of PCUN; and Ismael Perez, a member of PCUN. *See* Pls.' Opp'n. Br., Exs. 1–6 (Doc. No. 32–1).

Plaintiff Rivera has worked as a seasonal landscape laborer since 2007, and he is currently paid $16 per hour. *See* Rivera Aff. ¶ 3. He testifies that if he decided to search for another job within the landscaping injury, he would need to compete directly with H-2B workers, thereby reducing the wages that he "will be likely paid when applying for a job[.]" *See id.* ¶¶ 10, 12. He further testifies that allowing employers to pay lower wages to H-2B workers "would negatively affect [his] ability to find a job." *See id.* ¶ 10. Ms. Luna's affidavit supports Plaintiff Rivera's affidavit with data and attachments. *See generally* Luna Aff.

CATA has approximately 2,500 members, including those who work in non-agricultural jobs and H-2B workers seasonally employed in landscaping jobs. Carrasquillo Aff. ¶¶ 5–6. Mr. Carrasquillo identifies some occupations in which CATA has U.S. worker-members competing with H-2B workers. *See id.* ¶ 9. He testifies that:

> Through its work, CATA strives to improve the working and living conditions of its members and member communities. CATA seeks to protect its members' interest in ensuring that the U.S. Department of Labor is enforcing the H-2B regulations, specifically by accurately assessing the wages to be paid to H-2B workers so that they are fairly compensated for their work, and so that U.S. and work-authorized individuals in those industries do not see a decrease in their wages due to the employment of H-2B workers.

*Id.* ¶ 7. He also describes CATA's participation in previous lawsuits regarding regulations determining the H-2B prevailing wage. *See id.* ¶¶ 11–15, 21.

NFWC is a nonprofit organization whose membership includes both U.S. workers and H-2B workers in the forestry and harvesting industry. Wilmsen Aff. ¶ 3–4. Mr. Wilmsen describes NFWC's "legal and public advocacy" regarding the H-2B program regulations, including participation in previous lawsuits against DOL and DHS. *Id.* ¶ 10. Mr. Wilmsen states that:

> The NFWC strives to protect the interests of its U.S. worker members by ensuring the U.S. Department of Labor (DOL) carries out its duty to prevent the importation of H-2B workers from adversely affecting the wages and working conditions of U.S. workers employed in the same occupation and area of employment as H-2B workers. The NFWC also strives to protect the interests of its H-2B worker members by ensuring DOL enforces the H-2B regulations so that they are not paid artificially low wages and do not work in substandard working conditions[.]

Wilmsen Aff. ¶ 8–9. He testifies that the H-2B wage harms its members who are U.S. workers, and he predicts that the 2015 Wage Rule "will have a particularly depressive effect on [their] wages and job opportunities." *Id.* ¶¶ 13–14.

PCUN is a union representing over 6,500 members in reforestation and agriculture. Ramirez Aff. ¶ 3–6. PCUN's mission is "to empower its membership to recognize and take action against worker exploitation." *Id.* PCUN was organized to "represent[] the interests of its members in reforestation work to improve their wages and working conditions." *Id.* ¶ 14. Mr. Ramirez describes PCUN's involvement in previous challenges to H-2B wage regulations. *See id.* ¶¶ 9, 17–23. He asserts that PCUN has increased its resources devoted to challenging H-2B wage regulations, including devoting PCUN staff time to understanding the relevant legal issues and participating in lawsuits. *Id.* ¶¶ 16, 24.

Mr. Ramirez testifies that PCUN's members compete with H-2B workers for jobs, and that H-2B regulations have negatively impacted PCUN's members' wages, working conditions, and employment opportunities. *Id.* ¶ 4–6. More specifically, he testifies that PCUN members

such as Ismael Perez "are unable to find work in forestry at a sustainable wage[]" because of low H-2B wages. *Id.* ¶ 15.

Mr. Perez testifies that he organized a co-op with his family in 1999 and "began bidding on contracts for reforestation work." Perez Aff. ¶ 5. His co-op was successful until 2008. *Id.* ¶ 5– 6. Since then, Mr. Perez's co-op has lost bids to contractors that use H-2B workers. *Id.* ¶ 6. His co-op has performed reforestation work since 2008, but less than it previously had and not enough to allow specialization. *Id.* ¶ 9. Contracts pay less for comparable work, and Mr. Perez's wages have been "affected." *Id.*

Mr. Perez avers that the recent prevailing wage for "an experienced forestry worker" is now about $13.50 per hour, a decrease from "a few years ago." *Id.* ¶ 7. Forest Service contract officers told Mr. Perez that his co-op could employ H-2B workers "for about half of the prevailing wage rate." *Id.* They also told him to apply for H-2B workers so his co-op could "bring the wage rates down to be competitive." *Id.* ¶ 8.

## II.    SUMMARY JUDGMENT STANDARD

The court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Id.* at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in her favor. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Id.* at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257.  Furthermore, the nonmoving may not simply allege facts, but instead must "identify those facts of record which would contradict the facts identified by the movant." *Port Auth. of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002). The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When parties file cross-motions for summary judgment, the court must apply the summary judgment standard to each party's motion individually. *See Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

## III.    ARTICLE III STANDING REQUIREMENTS

Federal courts are courts of limited subject matter jurisdiction, restricted by Article III of the United States Constitution to decide only "Cases" and "Controversies." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992); *see also Edmonson v. Lincoln National Life Ins. Co.*, 725 F.3d 406, 414 (3d Cir. 2013). Article III jurisdictional requirements are essential to maintain the proper separation of powers between the three co-equal branches of government. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998). Without jurisdictional limits, the judiciary could unnecessarily decide "abstract questions of wide public significance[,]" usurping power from Congress and the President. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975).

Justiciability doctrines such as standing are the enforcement mechanisms through which courts enforce Article III jurisdictional requirements. *See Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009). For a district court to have jurisdiction, plaintiffs must have standing at the time of the filing of the complaint. *See Defenders of Wildlife*, 504 U.S. at 571 n.5; *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014).

### A.      Burden of Proof

Plaintiffs bear the burden of proof to establish standing. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000); *Toll Bros.*, 555 F.3d at 138 n.5. Standing is not a pleading requirement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883–89 (1990); *Pennsylvania Prison Soc. v. Cortes*, 508 F.3d 156, 161 (3d Cir. 2007). Each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Pennsylvania Prison Soc.*, 508 F.3d at 161.

To defeat summary judgment, a plaintiff must therefore submit "affidavits or other evidence" demonstrating standing "through specific facts." *Fair Housing Council of Suburban Philadelphia v. Montgomery Newspapers*, 141 F.3d 71, 76 (3d Cir. 1998) (quoting *Defenders of Wildlife*, 504 U.S. at 562). A district court cannot find that an "affidavit containing general allegation of injury" sufficiently "constitute[s] averment of requisite facts" solely because "otherwise allegation of injury would be unsupported[.]" *National Wildlife Federation*, 497 U.S. 889. Conversely, to be entitled to summary judgment, a plaintiff must "establish that there exists no genuine issue of material fact as to justiciability or the merits." *Dep't of Commerce v. U.S. House of Rep.*, 525 U.S. 316, 329 (1999).

**B.**     **Irreducible Constitutional Minimum of Standing**

Three elements comprise the "irreducible constitutional minimum of standing[.]" *Defenders of Wildlife*, 504 U.S. at 560. To establish standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal relationship between that injury and the challenged action; and (3) the likelihood that a favorable decision would redress that injury. *See id.* at 560–61; *see also Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009).

To be cognizable under Article III, an injury must be "actual or imminent." *Defenders of Wildlife*, 504 U.S. at 560. To constitute sufficient injury in fact, a plaintiff must demonstrate that a threat of future harm is "certainly impending[.]" *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1997); *see also New Jersey Physicians, Inc. v. President of the United States*, 653 F.3d 234, 238 (3d Cir. 2011) (plaintiffs must "demonstrate a *realistic danger* of sustaining a direct injury[]") (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) ("an indefinite risk of future harms by unknown third parties" does not confer standing). A "conjectural or hypothetical" injury is not justiciable. *Lujan*, 504 U.S. 560.

An injury in fact must also be "concrete and particularized[.]" *Defenders of Wildlife*, 504 U.S. at 560. This requirement means that the party seeking review must "be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972). Organizations cannot establish standing "solely on the basis of institutional interest in a legal issue[,]" *Pennsylvania Prison Soc.*, 508 F.3d at 162, because an "abstract concern" that could be addressed by litigation "does not substitute for the concrete injury required by Art. III." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). Furthermore, a plaintiff cannot establish standing simply by "making expenditures to advance litigation[.]" *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 280 (3d

Cir. 2014); *see also Steel Co.*, 523 U.S. at 107 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.").

Injury in fact alone is not enough to confer standing—a plaintiff must also show that the injury "fairly can be traced to the challenged action of the defendant[.]" *Simon*, 426 U.S. at 41. A plaintiff cannot establish standing if his injury "results from the independent action of some third party not before the court." *Id.* at 41–42; *see also Toll Bros.*, 555 F.3d at 142 ("The plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury."); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (a plaintiff cannot establish standing if his injury is the result of "an indefinite risk of future harms inflicted by unknown third parties."). But causation in the standing context "is not the same as proximate causation from tort law[.]"*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 366 (3d Cir. 2014). Even absent but-for causation, a plaintiff may have standing if "the record present[s] substantial evidence of a causal relationship between the government policy and the third-party conduct, leaving little doubt as to causation and likelihood of redress." *Id.* (quoting *Bloomberg L.P v. CFTC*, 949 F. Supp. 2d 91, 116 (D.D.C. 2013).

A plaintiff must also demonstrate that is "likely" that his injury will be "redressed by a favorable decision." *Defenders of Wildlife*, 504 U.S. at 561. It is more difficult for a plaintiff to establish that a favorable court decision will redress his injury when he challenges government regulations that "neither require nor forbid any action" by the plaintiff. *Summers*, 555 U.S. at 494. When the plaintiff is not "himself an object" of the regulation, he must aver more facts at the summary judgment stage to demonstrate redressability. *Defenders of Wildlife*, 504 U.S. at 561. Although "standing is not precluded[]" in this situation, "it is ordinarily 'substantially more difficult' to establish." *Defenders of Wildlife*, 504 U.S. at 562. This difficulty arises because

when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else* . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction[.]" *Id.* The plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* If a plaintiff's injury is "not tied to application of the challenged regulations," he does not have standing to challenge those regulations. *See Summers*, 555 U.S. at 495.

### C.       Standing for Prospective Relief

A plaintiff must establish standing for the type of relief sought. *See Laidlaw Environmental Services*, 528 U.S. at 185. To have standing for prospective relief, a plaintiff must demonstrate "continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past injury is relevant because it provides evidence on "whether there is a real and immediate threat of repeated injury[,]" but past injury "does not in itself show a present case or controversy regarding injunctive relief[.]" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

When a plaintiff challenges particular provisions of a regulation, that plaintiff must demonstrate standing for *each* provision he challenges. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 233–36 (1990). A plaintiff has standing to challenge a provision only if its application causes a cognizable injury to him. *See FW/PBS, Inc.*, 493 U.S. at 231 (holding that the Court was under "an independent obligation" to determine "whether petitioners had standing to challenge any particular provision of the ordinance[]"); *see also Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007) (party "has standing to challenge only those provisions that applied to it[]"); *Covenant Media of SC, LLC v. City of North Charleston*, 493 F.3d 421, 430 (4th

Cir. 2007) ("a plaintiff must establish that he has standing to challenge each provision of an ordinance by showing that he was injured by the application of those provisions[]"). It would be "patently advisory" for a Court to evaluate all provisions of a regulation based on a challenge by a plaintiff who suffers harm only from particular provisions of that regulation. *See Babbitt*, 442 U.S. at 292, 299, 304 (holding that challenges to two provisions of a state statute were not justiciable, but that challenges to three other provisions of the same state statute were justiciable). A plaintiff must therefore demonstrate injury in fact, causation, and redressability for each challenged provision. *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1273 (11th Cir. 2006) (collecting cases).

### D.    Associational Standing

An association can establish standing "in its own right" if it demonstrates that there is injury to the association itself. *Warth*, 422 U.S. at 510; *see also Pennsylvania Psychiatric Society v. Green Spring Health Services, Inc.*, 280 F.3d 278, 283 (3d Cir. 2002) (associations may demonstrate standing "by asserting claims that arise from injuries they directly sustain[]").

An association can also establish standing on behalf of the association's members, if three elements are met. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977). The Supreme Court in *Hunt* stated the test for associational standing:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

432 U.S. at 343. To establish associational standing, the plaintiff association must "make specific allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers*, 555 U.S. at 497–98 (emphasis added); *see also New Jersey Physicians, Inc. v.*

*President of the United States*, 653 F.3d 234, 241 (3d Cir. 2011). An affidavit is insufficient to establish associational standing if it does not "name the individuals who were harmed by the challenged" action. *Summers*, 555 U.S. at 498–99; *see also FW/PBS, Inc.*, 493 U.S. at 235 (finding that affidavit "falls short of establishing" standing because "it fails to identify the individuals" who were allegedly harmed). Speculation that "it is certainly possible—perhaps even likely—that one individual will meet all of these criteria . . . does not suffice." *Summers*, 555 U.S. at 499. Although the association must identify at least one member who has standing, "requests by an association for declaratory and injunctive relief do not require participation by individual association members." *Hospital Council of Western Pennsylvania v. City of Pittsburgh*, 949 F.2d 83, 89 (3d Cir. 1991).

## IV.   DISCUSSION

Defendants argue that this Court lacks subject matter jurisdiction because Plaintiffs do not have Article III standing to bring their claims and because Plaintiffs' claims are "prudentially unripe." Defs.' Br. at 11–12. To survive summary judgment, Plaintiffs must establish, through affidavit or other evidence, that there is a genuine issue of material fact as to standing. *See Fair Housing Council*, 141 F.3d at 76 (quoting *Defenders of Wildlife*, 504 U.S. at 562). All facts in Plaintiffs' supporting affidavits will be accepted as true and the Court will construe ambiguities in their favor. *See Anderson*, 477 U.S. at 255; *Defenders of Wildlife*, 504 U.S. at 561. The Court will address in turn each plaintiff's standing to challenge the relevant provisions of the 2015 Wage Rule.

### A.   Antonio Rivera Martinez

Plaintiff Rivera fails to raise a genuine issue of material fact as to his standing. He does not testify to facts supporting *any* cognizable Article III injury. He does not aver that he is

14

currently searching or imminently planning to search for another job in competition with H-2B workers, or that his current employer intends to reduce his wage because of competition with H-2B workers. He testifies only that he would be harmed by competition with H-2B workers "*[i]f* [he] were to look for another job within the landscaping industry[.]*" See* Rivera Aff. ¶ 10 (emphasis added). The Supreme Court has explicitly rejected such "some day" intentions. *See Defenders of Wildlife*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Plaintiff Rivera therefore does not have standing to challenge the 2015 Wage Rule, and this Court does not have jurisdiction to consider his claims. Defendants are entitled to summary judgment as to Plaintiff Rivera.

### B.   CATA

CATA fails to raise a genuine issue of material fact as to either standing in its own right or associational standing. CATA relies exclusively on Mr. Carrasquillo's affidavit to demonstrate standing. However, Mr. Carrasquillo does not testify to any facts suggesting that any provision of the 2015 Wage Rule has harmed or will harm CATA itself. CATA's concern about the wages of H-2B and U.S. workers is not a cognizable Article III injury. *See Simon*, 426 U.S. at 40. Furthermore, CATA cannot establish standing in its own right through litigation expenses. *Blunt*, 767 F.3d at 280. As such, CATA does not demonstrate standing in its own right to challenge provisions of the 2015 Wage Rule before this Court.

Mr. Carrasquillo's affidavit also does not aver facts to establish CATA has standing on behalf of its members. He does not testify that he personally suffered or will suffer any harm from provisions of the 2015 Wage Rule. Fatal to CATA's assertion of associational standing, Mr. Carrasquillo does not identify any *specific* CATA member harmed by the challenged

provisions of the 2015 Wage Rule. *See Summers*, 555 U.S. at 497–98. Although "it is certainly possible" that at least one of CATA's members has standing, this is insufficient to raise a genuine issue of material fact as to associational standing. *See id.* at 499. This Court therefore does not have jurisdiction over CATA's claims, and Defendants are entitled to summary judgment as to CATA.

### C.   NFWC

Like CATA, NFWC does not have standing to challenge the 2015 Wage Rule in its own right. Mr. Wilmsen does not testify to any facts to suggest that the 2015 Wage Rule has harmed or will harm NFWC itself. NFWC's investment in litigation and interest in the wages of its members are not substitutes for a cognizable Article III injury. *See Simon*, 426 U.S. at 40; *Blunt*, 767 F.3d at 280.

NFWC also does not raise a genuine issue of material fact as to associational standing. Mr. Wilmsen does not testify that he personally suffered or will suffer any harm from the 2015 Wage Rule. Furthermore, Mr. Wilmen's affidavit cannot establish associational standing because it does not "name the individuals who were harmed" or allegedly will be harmed by the challenged provisions of the 2015 Wage Rule. *See Summers*, 555 U.S. at 498–99. Because NFWC does not have standing, this Court does not have jurisdiction over NFWC's claims, and Defendants are entitled to summary judgment as to NFWC.

### D.   PCUN

PCUN also does not have standing to challenge provisions of the 2015 Wage Rule in its own right. Although Mr. Ramirez testifies that PCUN has invested in litigation and advocacy activities related to H-2B wage regulations, "a plaintiff by making expenditures to advance litigation does not suffer sufficient damage to support standing." *Blunt*, 767 F.3d at 280.

16

Because Mr. Perez is the only named PCUN member, PCUN has associational standing only if Mr. Perez has standing. Plaintiffs' argument as to Mr. Perez's standing is that "[t]he affidavit of Ismael Perez, a member of PCUN, attests to the fact that competition with H-2B workers has affected his ability to win contracts and has also depressed the wages he receives for his forestry work." Pls.' Opp'n. Br. at 3 n.2. Plaintiffs' interpretation of Mr. Perez's attestations focuses on past economic injury caused by general competition with H-2B workers. Past economic injury does not provide standing to prospectively challenge a specific regulation. *See Lyons*, 461 U.S. at 102. Furthermore, the H-2B workers with whom Mr. Perez allegedly competed did not have their entry determined or their wages set by any provision of the 2015 Wage Rule, but instead by previous regulations not at issue in this case.

Plaintiffs fail to demonstrate that the challenged provisions of the 2015 Wage Rule threaten imminent *future* harm to Mr. Perez. Mr. Perez states in his affidavit that he does not intend to hire H-2B workers, and thus he does not intend to apply for a PWD under the challenged regulations. Therefore, Mr. Perez's threat of future injury arises exclusively from an "allegedly unlawful regulation" of his competitors. *Defenders of Wildlife*, 504 U.S. at 561–62. Because of this, it is "substantially more difficult" for Plaintiffs to demonstrate that Mr. Perez has standing. *Id.*

To establish a "certainly impending" threat of future injury to Mr. Perez, Plaintiffs must present evidence that the 2015 Wage Rule's "allegedly unlawful regulation" of Mr. Perez's competitors imminently and actually threatens harm to Mr. Perez. Mr. Perez has standing to challenge particular provisions of the 2015 Wage Rule only if those specific provisions threaten imminent harm to him. *See FW/PBS, Inc.*, 493 U.S. at 231. Plaintiffs do not provide *any* evidence linking an imminent threat of harm to Mr. Perez to specific provisions of the 2015

Wage Rule.[2] Therefore, Plaintiffs fail to demonstrate that Mr. Perez is suffering an imminent threat of future injury fairly traceable to the challenged provisions of the 2015 Wage Rule. *See Steel Co.*, 523 U.S. at 109; *O'Shea*, 414 U.S. at 494.[3] Because Mr. Perez does not have standing, PCUN does not have associational standing. This Court therefore does not jurisdiction to decide the merits of Plaintiffs' claims.

## V.    CONCLUSION

As Plaintiffs have failed to demonstrate standing, Plaintiffs' Motion for Summary Judgment (Doc. No. 21) is **DENIED** and Defendants' Motion for Summary Judgment (Doc. No. 27) is **GRANTED**.

Dated:___12/04/2015_____                          s/ Robert B. Kugler

                                                       ROBERT B. KUGLER

                                                       United States District Judge

---

[2] Mr. Perez's competitors would need to apply for and receive PWDs under *particular provisions* of the 2015 Wage Rule. If, for example, Plaintiffs introduced evidence that Mr. Perez's competitors would seek and obtain PWDs based on CBAs, then Mr. Perez may have standing for prospective relief against 20 C.F.R. §§ 655.10(b)(1). In that case, however, it would cause no harm *to Mr. Perez* to allow employers to apply for PWDs based on employer-provided surveys under 20 C.F.R. § 655.10(b)(2) and § 655.10(f)(1). It would therefore be "patently advisory" for this Court to substantively analyze 20 C.F.R. § 655.10(b)(2) or § 655.10(f)(1). *See Babbitt*, 442 U.S. at 304.

[3] The Court also notes that any threat of future injury to Mr. Perez caused by his competitors' unlawful actions is not fairly traceable to the 2015 Wage Rule. Mr. Perez asserted that Forest Service contract officers told him he "could import workers with H-2B visas . . . for about half of the prevailing wage rate." Perez Aff. ¶ 7. Mr. Perez's competitors are not acting lawfully if they are paying H-2B workers $6.75 per hour (half of his asserted prevailing wage of $13.50 per hour). Pursuant to 20 C.F.R. § 655.10(a), an employer must pay the highest of the PWD or Federal, State, or local minimum wage. The federal minimum wage is $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). The state minimum wage is $9.25 per hour in Oregon and $9.47 per hour in Washington. *See O.R.S.* § 653.025(2); Oregon Bureau of Labor and Industries, *Oregon 2015 Minimum Wage Determination*, Sept. 17, 2014; *R.C.W.A.* 49.46.020(b); Washington State Department of Labor & Industries, *No increase to Washington state's minimum wage in 2016*, Sept. 30, 2015.